IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RAY ELWOOD MARTIN,                    )
                                      )
                Petitioner,           )
                                      )
vs.                                   )          Case No. 04-CV-352-CVE-PJC
                                      )
CHARLES RAY, Warden,                  )
                                      )
                Respondent.           )

## OPINION AND ORDER

Before the Court is the petition for a writ of habeas corpus (Dkt. # 1) filed by Petitioner, a state inmate represented by counsel. Petitioner also filed a brief in support of his petition (Dkt. # 2). Respondent filed a response (Dkt. # 7), and has provided the state court records (Dkt. ## 7 and 8) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 9) to Respondent's response. Petitioner also filed a request for status conference (Dkt. # 13). For the reasons discussed below, the Court finds the petition should be denied. The request for a status conference shall be declared moot.

## *BACKGROUND*

In the fall of 2001, Petitioner's grandson, Michael Cleveland, went to the Owasso Police Department and complained that in 1993, when he was ten (10) years old,[1] he was sexually abused by his grandfather, Petitioner Ray Elwood Martin. On October 10, 2001, as a result of the accusations, Petitioner was interviewed by Owasso Police Detective Sonya DeArmond. During the interview, Petitioner admitted having had sexual contact with his grandson. On November 30, 2001, Petitioner was charged with one count of Sexual Abuse of a Minor, in Tulsa County District Court,

---

[1]Michael Cleveland was born February 19, 1983. See Dkt. # 8, Tr. Trans. Vol. III at 253.

Case No. CF-2001-6917. Following a preliminary hearing, the information was amended to allege Forcible Sodomy occurring at the church where Petitioner served as pastor, located at 708 N. Atlanta Ave. (Count 1), and Forcible Sodomy occurring at Petitioner's home, located at 7319 E. King St. (Count 2). Petitioner was tried by a jury and was acquitted on Count 1 and found guilty on Count 2. On October 30, 2002, he was sentenced in accordance with the jury's recommendation to twenty (20) years imprisonment.  He was represented during trial proceedings by attorney Mark D. Lyons.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA").  On appeal, he continued to be represented by attorney Lyons.  In his brief-in-chief, he raised four (4) propositions of error as follows:

> Proposition 1:  The forcible sodomy statute is inherently ambiguous and contradictory and cannot be enforced. Furthermore, it was error for the trial court not to instruct the jury on the crime of non-forcible sodomy.
>
>     A.    The forcible sodomy statute is unenforceable as inherently contradictory when it defines as a part of that statute, acts that do not require force.
>
>     B.    The failure of the trial court to require proof of force as an element of the charge and the court's failure to require force be included in the jury instructions was reversible error.
>
> Proposition 2:  The trial court should have sustained Martin's demurrer to the evidence based on a violation of the statute of limitations, or in the alternative, it was reversible error for the trial court not to submit Martin's proposed jury instruction on the statute of limitations to the jury.
>
> Proposition 3:  The trial court committed reversible error in not allowing the defendant to admit evidence of the coercive investigative techniques used by Det. DeArmond to cause Martin to provide a statement in this case.
>
> Proposition 4:  The trial court committed reversible error in not granting a mistrial when Det. DeArmond attacked the credibility of Martin when she testified.

(Dkt. # 7, Ex. 2).  In an unpublished opinion, filed September 16, 2003, in Case No. F-2002-1381, see Dkt. # 7, Ex. 3, the OCCA affirmed the judgment and sentence of the trial court. Petitioner states

that he filed a motion for rehearing but the request was denied on November 18, 2003. <u>See</u> Dkt. #
2 at 2.

Petitioner filed the instant habeas corpus petition on April 22, 2004 (Dkt. # 1). In his petition
and supporting brief, Petitioner identifies three (3) grounds of error, as follows:

Ground 1:    Statute of limitations -- the applicable statute of limitations for the offense
             had expired prior to the initiation of charges.

Ground 2:    Denial of right to present a defense.

Ground 3:    Denial of due process of law.

(Dkt. # 2). In response to the petition, Respondent asserts that Petitioner's state law claims are not
cognizable on federal habeas corpus review and that Petitioner is not otherwise entitled to habeas
relief under 28 U.S.C. § 2254(d).  <u>See</u> Dkt. # 7.

### *ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion
requirements of 28 U.S.C. § 2254(b) and (c).  <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982).
Respondent concedes and the Court agrees that the exhaustion requirement of 28 U.S.C. § 2254(b)
is satisfied in this case.  In addition, the Court finds that Petitioner is not entitled to an evidentiary
hearing.  <u>See</u> <u>Michael Williams v. Taylor</u>, 529 U.S. 420 (2000).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be
applied by federal courts reviewing constitutional claims brought by prisoners challenging state
convictions.  Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain
federal habeas relief only if the state decision "was contrary to, or involved an unreasonable

application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, to the extent Petitioner's claims are cognizable in a federal habeas corpus proceeding, those claims shall be reviewed pursuant to § 2254(d).

### 1. *Statute of limitations*

As his first ground of error, Petitioner asserts that his criminal prosecution was commenced after expiration of the statute of limitations as provided by state law in violation of the *ex post facto* clause of the United States Constitution. Petitioner explains that he was initially charged on November 30, 2001, with an offense that did not exist at the time the acts allegedly occurred. Thereafter, the State filed an amended information to allege two (2) counts of Forcible Sodomy occurring between January 1, 1993, and July 1, 1999.  Petitioner argues that in 1993, at the time of the offense charged in Count 2, Oklahoma law, see Okla. Stat. tit. 22, § 152(C), provided that a charge of forcible sodomy must be filed within seven (7) years of the date of discovery of the offense. He further explains that the Oklahoma legislature amended § 152, effective November 1,

4

2000, to provide that "discovery" means the date the crime is reported to a law enforcement agency. See Dkt. # 9.  He relies on Supreme Court rulings entered in Stogner v. California, 539 U.S. 607 (2003), and United States v. Marion, 404 U.S. 307  (1971), to assert that to bring the charge in Count 2 within the statute of limitations, the State of Oklahoma retroactively applied a new law in violation of the *ex post facto* clause. On direct appeal, Petitioner argued that under state law, prosecution of the charge of forcible sodomy was time-barred.  Citing State v. Day, 882 P.2d 1096, 1098 (Okla. Crim. App. 1994), the OCCA rejected the claim and found that "the prosecution of this crime was commenced within seven (7) years of the 'discovery' of the crimes [sic] occurrence." See Dkt. # 7, Ex. 3 at 2.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Richmond v. Embry, 122 F.3d 866, 870 (10th Cir. 1997). Therefore, to the extent Petitioner asserts that he was prosecuted in violation of state law because the statute of limitations applicable to the charge of forcible sodomy had expired, his claim is not cognizable in this federal habeas corpus proceeding.

Petitioner also asserts, however, that his prosecution proceeded in violation of the *ex post facto* clause because the State of Oklahoma retroactively applied a new law in order to bring the charge against him within the statutory limitations period.  In Stogner v. California, 539 U.S. 607 (2003), the Supreme Court addressed application of the Constitution's *ex post facto* clauses to a criminal statute of limitations. The Supreme Court concluded that "a law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* clause when it is applied to

revive a previously time-barred prosecution." Id. at 632-33.  In this case, the crime charged in Count

2 was committed in 1993. At that time, Oklahoma law provided that the limitations period for

prosecution of forcible sodomy was seven (7) years from discovery.  Okla. Stat. tit. 22, § 152(C).

 In 1994, the OCCA clarified the definition of "discovery" by holding that "the statute of limitations

begins to run and the offense has been 'discovered' for purposes of Sections 152(A) and (C) when

any person (including the victim) other than the wrongdoer or someone in pari delicto with the

wrongdoer has knowledge of both (i) the act and (ii) its criminal nature." State v. Day, 882 P.2d

1096, 1098 (Okla. Crim. App. 1994).  Furthermore, "the crime has not been 'discovered' during any

period that the crime is concealed because of fear induced by threats made by the wrongdoer, or

anyone acting in pari delicto with the wrongdoer."  Id.

As indicated above, in 2000, the Oklahoma legislature amended Okla. Stat. tit. 22, § 152 by

adding a new subsection, providing that "[a]s used in subsection C of this section, 'discovery' means

the date that a physical or sexually related crime involving a victim under the age of eighteen (18)

years of age is reported to a law enforcement agency, up to and including one (1) year from the

eighteenth birthday of the child." Okla. Stat. tit. 22, § 152(G) (Supp. 2000).[2] The effective date of

the amendment was November 1, 2000.  Petitioner argues that the state retroactively applied the

2000 amendment to bring the charge against him, filed in November, 2001, within the applicable

seven (7) years. The Court finds, however, that the state courts did not apply the 2000 amendment

to bring the charge filed on November 30, 2001, and first reported to the Owasso police in October

of 2001, within the seven (7) year limitations period. Instead, the state courts applied the holding

---

[2]The Court notes that Okla. Stat. tit. 22, § 152 has undergone additional amendment since 2000. For example, effective November 1, 2005, the limitations period for the crime of forcible sodomy was lengthened to twelve (12) years. See Okla. Stat. tit. 22, § 152(C) (Supp. 2007).

of <u>State v. Day</u>. Although more than seven (7) years passed from the commission of the crime in 1993 to the filing of the criminal charge in 2001, there was evidence presented at Petitioner's trial that the victim could not recall whether he knew that Petitioner's behavior was wrong or inappropriate in 1993, but that he knew it was wrong by 1997. <u>See</u> Dkt. # 8, Tr. Trans. Vol. III at 283.  In addition, the victim testified that at the time of the incident in 1993, his grandfather told him "not to tell," <u>id.</u> at 259, and that he did not tell anyone about his grandfather's behavior because he was "confused and scared," <u>id.</u> at 260. The trial court relied on that testimony in overruling defense counsel's demurrer on the ground that the State failed to prove that the prosecution was timely commenced. <u>See</u> Dkt. # 8, Tr. Trans. Vol. IV at 412-417. Furthermore, the OCCA cited <u>State v. Day</u> in rejecting Petitioner's statute of limitations argument.  Thus, the Court concludes that the principle announced in <u>Stogner</u> was not violated and Petitioner was not prosecuted in violation of the *ex post facto* clauses of the United States Constitution.  His request for habeas corpus relief on this ground shall be denied.

### 2.  *Evidentiary ruling*

As his second proposition of error, Petitioner alleges that the trial court improperly denied him the right to present his defense by denying his request to present a condensed version of his videotaped interview by Detective DeArmond.  <u>See</u> Dkt. ## 1 and 2. Petitioner contends that he was faced with the irreconcilable dilemma of whether to introduce an unedited version of the videotape or omit his highly edited version. On direct appeal, the OCCA cited <u>Maxwell v. State</u>, 742 P.2d 1165, 1170 (Okla. Crim. App. 1987), and ruled that "the trial court did not abuse its discretion in ruling on Appellant's proffered highly edited tape recording." (Dkt. # 7, Ex. 3).

"Federal courts hold no supervisory authority over state judicial proceedings and may

intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982) (citations omitted).  Evidentiary rulings by a state court cannot serve as the basis for habeas corpus relief unless the ruling rendered the petitioner's trial fundamentally unfair resulting in a violation of due process.  Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002); Fox v. Ward, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that to justify habeas relief, trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process"); Duvall v. Reynolds, 139 F.3d 768, 789 (10th Cir. 1998); Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir. 1989) (citing Brinlee v. Crisp, 608 F.2d 839, 850 (10th Cir. 1979)).

In this case, Petitioner wanted to present a redacted version of the videotaped interview to demonstrate that his admissions were involuntary and the result of unconstitutional coercion by the detective.  The entire interview lasted just under two hours.  From the videotape of the entire interview, defense counsel had selected seven and one-half minutes of "snippets" allegedly demonstrating coercion and trickery by the detective. In response to Petitioner's request for admission of his condensed version of the videotape, the trial court judge ruled that a determination of voluntariness of the confession is based upon a totality of the circumstances, and that, as a result, to make a determination of voluntariness, the jury would have to view the entire videotape. See Dkt. # 8, Tr. Trans. Vol. III at 336. The trial court judge warned Petitioner that if he continued to challenge the voluntariness of his admissions to the detective, the entire videotape, which included damaging admissions of other crimes, would come into evidence. Id. at 337.  Defense counsel declined to offer the condensed version of the videotape. Id.

To the extent Petitioner challenges the trial court's denial of his request to admit a redacted

version of the videotape based on state evidentiary law, he is not entitled to habeas corpus relief on his claim unless he demonstrates that his trial was rendered fundamentally unfair by the alleged error. After reviewing the trial transcript, the Court cannot find that Petitioner's trial was rendered fundamentally unfair by the ruling serving to exclude the redacted videotape.

Petitioner also argues, however, that the trial court's ruling resulted in the denial of his right to present a defense. The Court disagrees. The record reflects that Petitioner presented his involuntariness defense through the cross-examination of Detective DeArmond by defense counsel. See Dkt. # 8, Tr. Trans. Vol. III at 310-318. The Court concludes that Petitioner is not entitled to habeas corpus relief on his claim challenging the trial court's evidentiary ruling.

### 3. Evidentiary "harpoon"

As his third proposition of error, Petitioner complains that he was denied due process of law during the testimony of Detective DeArmond. Specifically, he asserts that the prosecutor impermissibly elicited opinion testimony as to Petitioner's truthfulness from Detective DeArmond, a witness for the State. On direct appeal, the OCCA cited Stemple v. State, 994 P.2d 61, 67 (Okla. Crim. App. 2000), and Al-Mosawi v. State, 929 P.2d 270, 284 (Okla. Crim. App. 1996), and found that "the trial court's sustaining of Appellant's objection and the admonition to the jury cured the error in the testimony."  See Dkt. # 7, Ex. 3.

"[E]rrors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law." Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990). Furthermore, to the extent this claim challenges the conduct of the prosecutor, it is well established that "[p]rosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against

the defendant fundamentally unfair." <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1275 (10th Cir. 1999). The Court must "consider the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial.... Ultimately, we must consider the probable effect the prosecutor's [conduct] would have on the jury's ability to judge the evidence fairly." <u>Id.</u> at 1276 (internal quotations and citations omitted).

Petitioner complains of the following exchange between the prosecutor and Detective DeArmond:

Q:    Did you tell Mr. Martin that you would do anything with regard to the information that he gave you?

A:    Yes.

Q:    What did you tell Mr. Martin that you would do with the information that he gave you?

A:    I told him that if he would be truthful and cooperate and give me a full disclosure at what had happened, that I would reflect that information to show that he had been cooperative and fully disclosed what had happened.

Q:    At the conclusion of your interview with Mr. Martin, was it your opinion that that's what he had done?

A:    No.

MR. LYONS:    Objection, Your Honor.

THE COURT:    I'll sustain the objection. Admonish the jury to disregard the last question and the last answer.

MR. LYONS:    I move for mistrial, Your Honor.

THE COURT:    Overruled.

(Dkt. # 8, Tr. Trans. Vol. III at 304-05). According to Petitioner, "[t]he question posed by the prosecutor, and the answer was an impermissible comment by the detective of her opinion of the

Applicant's credibility, which was tantamount to an evidentiary harpoon." See Dkt. # 2 at 14.

An "evidentiary harpoon" is a "metaphorical term of art that has been used by several state courts to describe the situation where a government witness, while testifying in a criminal case, deliberately offers inadmissible testimony with the purpose of prejudicing the defendant." United States v. Hooks, 780 F.2d 1526, 1535 n. 3 (10th Cir. 1986) (citing Bruner v. State, 612 P.2d 1375, 1378 (Okla. Crim. App. 1980)).  In this case, after considering the exchange between the prosecutor and the witness in light of the entire record, the Court finds that the challenged remark fails to come within the definition of an evidentiary harpoon.  There is no evidence that either the question or the response thereto was wilfully jabbed rather than inadvertent. In addition, the detective had already testified that Petitioner initially denied the allegations, but then admitted that he had touched the victim's penis with his hands and with his mouth. See Dkt. # 8, Tr. Trans. Vol. III at 302. Based on the record, the Court concludes that the statement at issue did not result in a trial so fundamentally unfair as to deny Petitioner due process. See Martin, 907 F.2d at 934.

Furthermore, even if the question and one word answer by the witness were improper, they were met by an immediate objection by Petitioner's counsel. The trial court judge admonished the jury to disregard the question and answer. Although the OCCA did not cite federal law in its ruling on this issue, the Tenth Circuit has recognized that the OCCA's longstanding position that a trial court's admonition usually cures any error is not in conflict with the standard established by federal law. Patton v. Mullin, 425 F.3d 788, 800 (10th Cir. 2005). Federal law provides that there is a presumption "that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." See Greer

11

v. Miller, 483 U.S. 756, 766 n. 8 (1987) (internal citations omitted).  Based upon the facts of this case, the Court agrees with the OCCA that the alleged improper question by the prosecutor during his direct examination of the detective was cured by the immediate objection and admonishment given by the trial court to the jury. Petitioner is not entitled to habeas corpus relief on this claim.

### CONCLUSION

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. # 1) is **denied**.  Petitioner's request for a status conference (Dkt. # 13) is **declared moot**. A separate Judgment shall be entered in this case.

DATED THIS 25th day of April, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT